[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
The matters before this Court are Plaintiffs' Motion to Adjudge Defendant in Contempt, Defendant's Motion to Adjudge Plaintiffs in Contempt, and Defendant's Motion for Sanctions Pursuant to Rule 11 and G.L. 1956 (1985 Reenactment) § 9-29-21
(1993 Cum. Supp.). Said matters all arise from a Consent Judgment entered into on December 13, 1991.
FACTS/TRAVEL
William H. Sherman and Sandra L. Sherman ("Plaintiffs" or "Shermans") live next door to the Defendant, Lenna W. Price ("Defendant" or "Mrs. Price"). Also joined as a defendant is Frances Price Dwyer, who lives in Massachusetts. After a jury trial on October 21, 1991, the Plaintiffs were held to be the owners of a portion of Defendant's land by adverse possession. That judgment was affirmed on November 23, 1993. Sherman v.Price, 632 A.2d 643 (R.I. 1993).
On December 13, 1991, the parties entered into a Consent Judgment Relating to Injunctive Relief, which is the basis of the motions being decided here. Paragraph 3(c) of that Consent Judgment states that:
 Defendant's grassy strip between the driveway of the Plaintiffs and the home of the Defendant, Mrs. Price, shall be maintained in accordance with all City Ordinances regulating the maintenance of her property and the disposal of her refuse.
The Plaintiffs at bar claim that this section is being violated by a fence erected by Mrs. Price in April 1994. Specifically, they claim that the fence is taller than that allowed by the Providence City Ordinances and that the sharp prongs on top of the fence should be meshed or turned over as required by the City Ordinances. The Plaintiffs further allege that Defendant violated Paragraph 3 (e) of the consent Judgment by using obscene language aimed at the Plaintiffs. Finally, Plaintiffs allege that Mrs. Price placed animal feces on the Plaintiffs' driveway in violation of Paragraph 3(a) of the Consent Judgment.
Defendant claims that Plaintiffs are in contempt of Paragraphs 2(a) and (i) of the Consent Judgment by trespassing on Defendant's land in order to break off the branches of her bushes and by directing obscenities at Defendant. Defendant further moves for sanctions to be imposed on Plaintiffs' attorney for bringing a frivolous suit. A hearing on these matters was held on June 21, 1994.
DISCUSSION
The purpose of civil contempt "is to coerce the defendant into compliance with the court order and to compensate the complaining party for losses sustained as a result of the violation of the court order." Ventures Management Co., Inc. v.Geruso, 434 A.2d 252, 254 (R.I. 1981). As no attempt is being made here to "punish the contemnor for an act in derogation of the authority and dignity of the court itself," Id., the proceeding at bar is civil in nature.
The finding of contempt "is addressed to the sound discretion of the trial justice." Merek v. Merek, 119 R.I. 841, 843,383 A.2d 1031, 1032 (1978). The basis of the contempt in this case is a Consent Judgment as opposed to a judgment issued by the Court after trial, but that "in no way effects [sic] the ability of the Court to enforce it through a finding of civil contempt."Palmigiano v. DiPrete, 700 F. Supp. 1180, 1192 (D.R.I. 1988). Such a judgment is "a judicial act with the same force and effect as a judgment rendered following a contested trial." Id. The fact that the parties consented to the restrictions in the Consent Judgment "does not entitle them to transgress. . . [the restrictions] now." Id.
The first issue to be decided in this case is whether the Defendant is in contempt of Paragraph 3(c) of the December 13, 1991 Consent Judgment Relating to Injunctive Relief. Plaintiffs allege that Defendant's newly constructed chain link fence violates the Providence City Ordinances in two ways, thus contravening the Consent Judgment which requires the Defendant to maintain her property in accordance with all City Ordinances. Plaintiffs first refer to Article IV, Sec. 5-46(d) of the Providence City Code on Buildings and Structural Appurtenances. Section 5-46, which is entitled "Lawful fences designated," applies particularly to partition fences, which are "fences erected upon a common division line between two (2) or more lots." This section specifically refers to hedge, stone and woven wire fences and states the respective requirements for each. Subsection (d), the last subsection of § 5-46, is the catch-all clause which gives the requirements for "all other kinds of partition fences not therein otherwise particularly described," fences which are not made of hedge, stone or woven wire. For the fences which fall under this catch-all provision, there is a height limit of four and one half feet, unless there is an agreement otherwise between the adjoining landowners. By alleging a violation of this subsection, the Shermans are in effect saying that the Defendant's fence is not a hedge, stone or woven wire fence. This is not the case.
Mrs. Price's fence, as shown in Plaintiffs' Full Exhibit 4 and as described in Plaintiffs' Motion to Adjudge in Contempt, is a "chain link fence." Plaintiffs' Motion at Paragraph 2. A "chain link fence" is defined in Webster's Third New International Dictionary as "a fence of heavy steel wire woven in continuous spirals so that when the spirals are integrated with each other a diamond-shaped mesh is formed" (emphasis added) and "woven wire" is defined as "a wire crossed and interlaced to form a network," like the heavy steel wire in the definition of "chain link fence" above. Thus, a chain link fence more appropriately fits under the provision for woven wire fences than under the catch-all subsection.
The woven wire fence subsection, like the subsections for hedge and stone fences, contains its own set of requirements and is not subject to the four and one half feet height limit of the catch-all provision. In fact, there is no height limit in the woven wire fence subsection. Therefore, the pertinent height limit for the Defendant's fence is found in § 5-54, which states that "no fence. . . which exceeds six (6) feet in height and which is located in or adjacent to a residential use shall be erected." This section places an outer height limit on all fences which do not have a more restrictive limit proscribed for them in another section. Woven wire fences are not specifically required to be less than six feet so they must meet only this six foot limit. The evidence before this Court clearly demonstrates that Mrs. Price's fence meets this six foot limit. Defendant's Motion at Paragraph 2.
Since the Defendant's fence is adjacent to a residential driveway, arguably § 5-47 applies, which imposes a three foot height restriction to fences "extending from the property line back a distance of twenty (20) feet." However, this section is expressly inapplicable to "a wire fence" such as the Defendant's chain link fence, which is still subject only to the less restrictive six foot height limit. The Defendant's fence meets this limit. Moreover, the wire fence exclusion in this section also lends support to the ordinance's comparable separate treatment of all wire fences in § 5-46.
This reading of §§ 5-46 and 5-47 is contrary to the Providence Fence Viewer's affidavit and testimony, but is in accordance with a plain reading of the ordinance. The Fence Viewer's affidavit states that "a fence running along a residential driveway shall not exceed the height of four and one-half feet unless there is an agreement." However, the specific provisions relating to hedge, stone and woven wire fences each give separate requirements from the catch-all provision containing the four and one-half foot requirement he references. Furthermore, the wording of § 5-47 establishes that fences adjacent to a residential driveway, such as he describes, should not "be over thirty-six (36) inches high" or three feet, except for wire fences which are excluded from this restriction. Instead of applying the above unambiguous provisions of the ordinances, the Fence Viewer applied a blanket four and one-half foot requirement on all fences regardless of any differing treatment provided for in the ordinances. Usually, a municipal officer's knowledge within the realm of his official position is given deference, as analogously "a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance."Smith v. Zoning Board of Review of City of Warwick,103 R.I. 328, 335, 237 A.2d 551, 555 (1968) (citing Monforte v. ZoningBoard of Review, 93 R.I. 447, 449, 176 A.2d 726, 727-728 (1962)). However, this deference is merely a presumption. Consequently, the affidavit and testimony will not be relied on by the Court if they lead to results which are clearly contrary to the law, as is the case here. Therefore, with respect to the height of Defendant's fence, this Court does not find that defendant is in contempt of Paragraph 3(c) of the Consent Judgment since the Court finds that the Defendant's fence is within the legal height limit.
In their second contempt allegation, that the sharp prongs on the Defendant's fence should be meshed or turned over, the Shermans implicitly admit that the woven wire fence provision, and not the catch-all provision, is the applicable subsection. According to this subsection, "there shall be no sharp prongs on top of. . . [a woven wire] fence and all prongs shall be either meshed or turned over." As shown in Plaintiffs' full Exhibit 3, Defendant has neither meshed nor turned over the prongs on her chain link fence. Since this Court finds that Mrs. Price's fence is a woven wire fence and that the sharp prongs on said fence are not meshed or turned over as required by the applicable City Ordinance, the Defendant is adjudged in contempt of Paragraph 3(c) of the Consent Judgment.
Plaintiffs further allege that the Defendant violated Paragraph 3(a) of the Consent Judgment by placing animal feces on the Shermans' driveway, which the consent judgment specifically prohibited. In support of this allegation, the Plaintiffs offer only unremarkable photographs. Plaintiffs' Full Exhibits 8, 9, 10. Although the Court is mindful of the historically strained relationship between the parties and certainly appreciates why the Shermans might have assumed that the Defendant had something to do with the feces, the Court finds that there is an absence of proof with respect to this element of contempt.
The Plaintiffs also allege a violation of Paragraph 3(e) of the Consent Judgment based upon the willful and malicious anti-Semitic comments allegedly made by Mrs. Price and prohibited by the Consent Judgment. Again, the Court understands the Plaintiffs' position given the history between the parties, including incidents similar to those alleged here. However, the Court finds Plaintiffs have not met their evidentiary burden with respect to this alleged violation.
As to the Defendant's Motion to Adjudge Plaintiffs in Contempt, the Court finds her allegations unpersuasive. The November 18, 1993 police report offered by Defendant simply reiterates mere allegations made by the Defendant. The report notes that Defendant "stated" that on November 18, 1993 at about 6:10 am, Mr. Sherman "pulled out some plants she had planted along the border of the property line." The report does not make any separate findings as to whether such event actually occurred but merely recounts Mr. Sherman's telling the police that the "plants scrape his car as he pulls in his driveway." No other evidence is offered to support this claim or the Defendant's claim that Plaintiffs used obscenities. "To establish civil contempt, a complainant must show by clear and convincing evidence that a specific order of court has been violated."Palmigiano, 700 F. Supp. at 1191. As the Defendant has not here presented clear and convincing evidence of contempt on the part of the Plaintiffs, her motion is denied. Furthermore, the Defendant should be reminded that the Plaintiffs are legally permitted to cut from Defendant's bushes or trees any branches which overhang the Plaintiffs' property. Rosa v. Oliveira,115 R.I. 277, 342 A.2d 601 (1975).
Defendant further moves for sanctions pursuant to Rule 11 and G.L. 1956 (1985 Reenactment) § 9-29-21 (1993 Cum. Supp.). Rhode Island uses the subjective good faith standard when evaluating the need for sanctions under Rule 11. Forte Brothers, Inc. v.Ronald M. Ash and Associates, Inc., 612 A.2d 717 (R.I. 1992). In order to sustain a good faith finding, the claim must have "some legal and factual basis when considered in light of the reasonable belief of the Individual making the claim." Id. at 724. The Court finds that a good faith basis for the motion exists in this case. Not only has this Court found the Defendant in contempt as to one allegation in the Plaintiffs' motion, but there is an affidavit from Fence Viewer, Adolf Morocco, supporting the allegation that the fence was too tall and a long history of similar behavior supporting the final two allegations of anti-Semitic comments and placement of feces on Plaintiff's land. Clearly, there are more than enough facts to support a good faith basis.
Under R.I.G.L. § 9-29-21, not only must the same good faith standard as with Rule 11 be met but, additionally, the papers must "not be filed `for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'" Warwick Land Trust v. Children's Friend,604 A.2d 1266 (R.I. 1992) (citing R.I.G.L. § 9-29-21). This Court is satisfied that no improper purpose occurred here. The Plaintiffs brought this action to enforce the provisions of the Consent Judgment, which they are legally entitled to do and which they must do if the Consent Judgment is to have any effect at all. Consequently, the Court finds that Rule 11 and R.I.G.L. § 9-29-21
sanctions are not warranted in the case at bar.
For the reasons herein above set out, this Court finds that Defendant is in contempt of Paragraph 3(c) of the Consent Judgment entered into on December 13, 1991. The sharp prongs on her woven wire fence are not meshed or turned over as required by Article IV, Sec. 5-46(c) of the Providence City Code. Defendant is hereby ordered either to remove the fence at her own cost and replace it with a fence that complies with the City Ordinances or to fix the existing fence so that it meets the requirements of the City Ordinances. If action necessary to achieve compliance with this order is not taken forthwith, this Court, upon Plaintiffs' subsequent motion, will impose fines and sanctions on defendant in order to compel performance, which the Court is permitted to do in accordance with its civil contempt powers.Troutbrook Farm, Inc. v. DeWitt, 611 A.2d 820 (R.I. 1992). Further, Defendant is ordered to pay Plaintiffs' counsel's reasonable attorney fees. Such an order is consistent with a finding of civil contempt since it "is in effect a condition of the order and not the imposition of costs in addition to those allowed by law." Nelson v. Progressive Realty Corp.,81 R.I. 445, 451, 104 A.2d 241, 244 (1954). The City Ordinances are clear and Defendant's failure to comply with same is also clear. Such a willful disregard of the law supports the awarding of attorney fees. Plaintiffs' additional requests for a surety bond for future damages and for damages for emotional distress are denied.
Counsel shall prepare the appropriate judgment for entry.